IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CAROL LUCERO,

      Plaintiff,

vs.                                   No. CIV 02-1539 LCS

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

## MEMORANDUM OPINION

**THIS MATTER** came before the Court upon Plaintiff's Motion to Reverse and Remand for a Rehearing (Doc. 6), filed May 19, 2003. The Commissioner of Social Security issued a final decision denying Plaintiff's applications for disability insurance benefits and supplemental security income. The United States Magistrate Judge, acting upon consent and designation pursuant 28 U.S.C. § 636(c), having considered the Motion, arguments of counsel, administrative record, and applicable law, finds that Plaintiff's Motion to Reverse and Remand for a Rehearing should be **DENIED**.

## Procedural Background

Plaintiff, now thirty-five years old, filed applications for disability insurance benefits and supplemental security income on February 24, 2000, alleging disability commencing on January 17, 2000, due to cognitive and psychotic disorders. Plaintiff has a high school education, and past relevant work as a day care worker, group home supervisor, sales associate, and activities assistant.

The Commissioner granted Plaintiff's application at the initial level on August 17, 2000, and

established a disability onset date of January 17, 2000.  Plaintiff appeals the onset date established in that determination and asserts that she has been continuously medically disabled since she filed a prior supplemental security income application on June 22, 1988, and a prior disability insurance benefits application on December 30, 1989.  Plaintiff's disability insured status expired on September 30, 2001.

The Commissioner's administrative law judge (ALJ) held a hearing at which Plaintiff appeared and was represented by counsel.  The ALJ issued his decision on June 27, 2002, analyzing Plaintiff's claim according to the sequential analysis set forth in 20 C.F.R. § 416.920(a)-(f).  At the first step of the sequential evaluation process, the ALJ found that Plaintiff had engaged in substantial gainful activity subsequent to her alleged 1988 disability onset date and that the medical and other evidence failed to establish that Plaintiff was disabled prior to January 17, 2000.  Thus, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act.  The ALJ expressly declined to reopen Plaintiff's prior applications.  The Appeals Council denied Plaintiff's the request for review.  Plaintiff now seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. §405(g).

**Standard of Review**

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether correct legal standards were applied. *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (*quotations omitted*).  Evidence is not substantial if it is overwhelmingly contradicted

2

by other evidence.  *See O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994) (*citation omitted*).  The district court reviews of the entire record, and may not reweigh the evidence nor substitute its judgment for that of the Commissioner.  *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991).

## Administrative Record

Plaintiff sustained a closed head injury, abdominal injuries and a fracture of the left clavicle in a May 28, 1988 automobile accident.  (R. at 139.)  Plaintiff was airlifted to the hospital where she underwent a splenectomy and remained comatose for one week.  (R. at 126; 139.)  On June 14, 1988, was transferred to St. Joseph Healthcare Rehabilitation Center where she was placed in a comprehensive rehabilitation program.  (R. at 126.)  When she was discharged on July 1, 1988, Plaintiff was independent in all bed mobility, ambulation, dressing, tub and commode transfers and feeding. (*Id*.) However, Plaintiff required supervision for light kitchen and household activities. (*Id.*) On discharge from the rehabilitation center, Plaintiff was diagnosed with cognitive memory deficit secondary to traumatic head injury, status post multiple fractures.  (*Id.*)  On December 19, 1988, Frank S. Jones, M.D., performed a physical examination of Plaintiff and opined that she may have had "some mild organic brain dysfunction" and no specific physical activity limitations.  (R. at 140.)

In January 1989, Catherine A. MacLean, Ph.D. performed a psychological examination of Plaintiff.  (R. at 143.)  Plaintiff reported that she wanted to return to work, that her treatment program underestimated her abilities, and that she wanted to do something more challenging.  (R. at 143-144.)  Dr. MacLean administered several tests and found that Plaintiff's IQ was in the low average range, that Plaintiff was able to persist, put sound levels of energy into her work, had

relatively good concentration, and a well-developed sense of responsibility and judgment.  (R. at 145.)  Dr. MacLean opined that Plaintiff could benefit from rehabilitative and adjustment services and brief psychotherapy, that her prognosis for significant rehabilitation appeared fair, and that Plaintiff should undergo a functional assessment at her chosen work setting.  (R. at 146.)  Dr. MacLean assigned Plaintiff a GAF score of 60.[1]  (*Id*.)  Plaintiff engaged in substantial gainful activity in 1989, 1990, 1998 and 1999, and had significant earnings in 1991, 1993, 1994 and 1997.  (R. at 52.)

On May 9, 2000, Anthony C. Traweek, Ph.D. performed a psychological examination.  (R. 154-164.)  Plaintiff reported that she had received a certificate as a physical therapy technician in 1992.  (R. at 156.)  Plaintiff exhibited unusual word usage, tangential thought patterns, and believed that she had existed in past lives dating back to biblical times.  (R. at 155.)  When asked about her ability to work, Plaintiff explained that she suffered from "self-seizures" and stated "I feel outside opinions let me know I'm not appreciated. When I get stressed, my body, well it starts venting out of me. It's an odor from all over, my legs, my arms and my back, and I shake."  (*Id*.)  Plaintiff complained that her "internals are shifting, they're moving around, I know it."  (R. at 156.)  Plaintiff drank six to twelve beers once a week without attaining a state of intoxication.  (R. at 157.)  She reported two DWIs; one in 1994 and one in 1997.  (*Id*.)  She smoked marijuana two or three times a week "for relaxation."  (*Id*.)  Plaintiff reported being involved in the justice system at least twenty-four times since she was a juvenile.  (R. at 158.)

---

[1]A GAF score is a subjective determination which represents "the clinician's judgment of the individual's overall level of functioning." *See* American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders (DSM-IV), (4th ed. 1994) at 30. The GAF Scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *See id*. at 32. A GAF score of 60 corresponded to moderate symptoms or moderate difficulty in social occupational, or school functioning.  DSM-IV at 32.

Dr. Traweek administered several psychological tests, and found that Plaintiff was in the upper limit of the borderline range of intellectual functioning.  (R. at 161-163.)  Dr. Traweek diagnosed depressive disorder, psychotic disorder, cognitive disorder, alcohol and cannabis abuse, borderline intellectual functioning, antisocial personality disorder with schizotypal features, and assigned Plaintiff a GAF score of 40.[2]  (R. at 163.)  Dr. Traweek expressed the opinion that Plaintiff was suffering from a psychological disturbance and would have difficulty interacting with supervisors and co-workers.  (R. at 163-164.)  Plaintiff's ability to understand and remember detailed instructions, adapt to changes in the workplace and react appropriately was mildly to moderately limited.  (R. at 164.)  Her ability to sustain concentration, attend to and carry out instructions and work without supervision appeared mildly limited.  (*Id*.)  Her ability to interact appropriately with supervisors or co-workers was moderately to markedly limited.  (*Id*.)  Dr. Traweek concluded that it as unclear if Plaintiff had an alcohol or cannabis abuse problem sufficient enough to interfere with her ability to work and recommended further evaluation and that a co-payee be identified to facilitate appropriate management of funds.  (*Id*.)  Based on Dr. Traweek's report, Plaintiff was found to be disabled at the by the evaluating agency as of January 11, 2000.

**Discussion**

Plaintiff argues that the ALJ erred by substituting his own medical opinion for that of a medical expert, the ALJ erred by failing to enlist the services of a medical advisor for purposes of interring an onset date, and the ALJ erred by failing to fully develop the record.

---

[2]  The GAF score of 40 corresponded to serious impairment in social relations and occupational functioning. DSM-IV at 30.

5

In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity. *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993) (*citing* 42 U.S.C. § 423(d)(1)(A)). At the first four levels of the sequential evaluation process, the claimant must show that she is not engaged in substantial gainful employment, she has an impairment or combination of impairments severe enough to limit her ability to do basic work activities, and her impairment meets or equals one of the presumptively disabling impairments listed in the regulations under Appendix 1 to Subpart P of Part 404, or she is unable to perform work she had done in the past. 20 C.F.R. §§ 404.1520; 416.920. At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other substantial gainful activity considering her residual functional capacity, age, education, and prior work experience. *Id.*

The question presented by this appeal is whether the Commissioner erred in setting Plaintiff's onset date at January 17, 2000.[3] In her February 24, 2000 application, Plaintiff claimed January 17, 2000 as her onset date. Plaintiff asserts that the ALJ erred by substituting his own medical opinion for that of a medical expert. An ALJ may not substitute his own medical judgment for that of medical professionals. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir.1996). At the hearing, the ALJ commented that he had some experience handling brain injury cases, that in his experience the bulk of recovery occurred in the two years following the brain injury, that the change in Plaintiff's

---

[3] The ALJ decision denying reopening of her June 22, 1988 and December 30, 1989 applications is not subject to judicial review. *See Califano v. Sanders*, 430 U.S. 99, 108 (1977) (judicial review limited by 42 U.S.C. § 405(g) to a final decision absent a constitutional challenge); *Dozier v. Bowen*, 891 F.2d 769, 771 (10th Cir. 1989) (same).

condition between her 1989 and 2000 psychological evaluations might not have been linear, and that factors such as alcohol and drug usage may have caused Plaintiff's condition to deteriorate.  (R. at 259.)

The ALJ's comments at the hearing were made during a course of a lengthy discussion with Plaintiff's counsel.  (R. at 246-263.)  The ALJ cautioned that whenever there is a hearing, regardless of whether the claimant is receiving benefits, the question of disability is an issue and a possible termination of benefits could result.  (R. at 247-248.)  The ALJ reassured Plaintiff that it was highly unlikely that Plaintiff's current determination of disability would be overtured due to the extent of her mental condition as diagnosed in Dr. Traweek's examination.  (*Id.*)

In his decision, the ALJ discussed the evaluations performed by Dr. Jones, Dr. MacLean and Dr. Traweek.  (R. at 25.)  After considering the medical opinions, the ALJ determined that an inference that Plaintiff was disabled during the interim period was contradicted by her ability to engage in substantial gainful activity and a complete lack of medical evidence during the intervening time period.  (*Id.*)  The ALJ's opinion demonstrates that he analyzed the available medical records as well as Plaintiff's work history before he determined that Plaintiff was not disabled before January 17, 2000.  The ALJ did not substitute his own medical judgment for that of medical professionals.  Substantial evidence supports the ALJ's decision.

Plaintiff claims that the ALJ erred by failing to enlist the services of a medical advisor for purposes of interring an onset date.  Social Security Ruling 83-20 defines the onset date as "the day an individual is disabled as defined in the Act and the regulations."  *Id.*  Factors relevant to the determination of disability onset include  the individual's allegation, the work history, and the medical evidence.  *Id.*  Of those factors, the medical evidence is primary in determining the onset of disability.

*Id.*   If it is necessary to infer an onset date, the ALJ should call on the services of a medical adviser. *Id.*   However, a medical advisor should be called only if the medical evidence of onset is ambiguous. *Reid v Chater*, 71 F.3d 372, 374 (10th Cir. 1995).

The reports of Dr. Jones and Dr. MacLean establish that Plaintiff was able to work after her 1988 car accident and therefore was not disabled at that time.   Plaintiff earned a physical therapy technician certificate in 1992.  Plaintiff engaged in substantial gainful activity in 1989, 1990, 1998 and 1999, and had significant earnings in 1991, 1993, 1994 and 1997.  Indeed, Plaintiff's disability insured status did not expire until December 2001.   Dr. Traweek's report indicated that substance abuse could be a factor related to Plaintiff's deficits in mental status as of the year 2000.   Based on this record, the ALJ was not required to call a medical adviser under Ruling 83-20.

Plaintiff contends that the ALJ erred by failing to fully develop the record.   The claimant bears the initial burden of proving disability.  *Henrie v. Dep't of Health & Human Servs.*, 13 F.3d 359, 361 (10th Cir. 1993); §20 C. F. R. 416.912(a).   Although there is a duty to develop the record, it is not the ALJ's duty to become the claimant's advocate. *Henrie*, 13 F.3d at 361. The ALJ's duty is only "one of inquiry and factual development." *Id.*   The record contains records from Plaintiff's rehabilitation center in 1988, reports from two examining physicians in 1988 and 1989, her earnings record, and Dr. Traweek's evaluation.   The record was adequately developed to permit the ALJ to make an informed decision regarding Plaintiff's onset date.   Substantial evidence of record supports the ALJ conclusion that Plaintiff was not disabled prior to January 17, 2000.

<u>Conclusion</u>

Upon review of the administrative record and the arguments presented, the Court has

determined that Plaintiff's Motion to Reverse and Remand for a Rehearing (Doc. 6), filed May 19, 2003, should be **DENIED**.

      **A JUDGMENT CONSISTENT WITH THIS MEMORANDUM OPINION WILL ISSUE.**

_____
**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**
**BY CONSENT AND DESIGNATION**